REBECCA C. WILLIAMS

V.

AUGUSTA COUNTY SCHOOL BOARD

Record No. 930963

June 10, 1994

Present: All the Justices

*Thomas E. Albro (Glen M. Robertson; Tremblay & Smith*, on brief), for appellant.

*Douglas L. Guynn (Jennifer E. Kirkland; Wharton, Aldhizer & Weaver*, on brief), for appellee.

*Amicus Curiae:* (Gregory M. Johnson; Richard E. Carter; McClure, Callaghan, Carter & Atkins, on brief), in support of appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we construe Code § 2.1-639.16 of the State and Local Government Conflict of Interests Act, Code §§ 2.1-639.1 through -639.24 (the Act), as it applies to a school board's employment of the sister-in-law of a member of the school board.

The Augusta County School Board (the Board) employed Rebecca C. Williams as a full-time teacher from August 1969 until she left teaching in May 1975. Thirteen years later, in the summer of 1988, Williams applied for a teaching position in Augusta County, but the Board refused to consider her application. The Board maintained that Williams was ineligible because she was the sister-in-law of the Chairman of the Board, George P. Williams, and Code § 2.1-639.16 prohibits the employment of a person with that relationship to a member of a board. Although Wil-

liams obtained contrary interpretations from both the Augusta County Attorney and the Attorney General, the Board declined to change its position.

Williams sued the Board, seeking a declaration that Code § 2.1-639.16 does not preclude the Board from considering her for employment. After an *ore tenus* hearing, the trial court entered judgment in favor of the Board. We awarded Williams an appeal.

■ Since 1928, the General Assembly has restricted the authority of a school board to employ relatives of its members. Initially, a father, mother, brother, sister, wife, son, or daughter of a school board member could not be hired as a teacher in the board member's school district. Code § 660 (1924 & Supp. 1928). No exceptions were allowed. From that time until the present, this hiring restriction has been expanded, modified, and recodified. In its present form, Code § 2.1-639.16 provides that a person who is a father, mother, brother, sister, spouse, son, daughter, son-in-law, daughter-in-law, sister-in-law, or brother-in-law of a member of the school board may not be employed by the school board. The section includes an exception to this prohibition which provides, in relevant part:

This section shall not apply to any person within such relationship who has been (i) regularly employed . . . by any school board prior to the taking of office of any member of such board.

Williams contends that qualification for this exception requires only that the applicant have been regularly employed by a school board at some point prior to the time the relative becomes a member of the school board. Consequently, she concludes that she is entitled to the exception because she was regularly employed as a full-time teacher from 1969 to 1975, prior to 1983 when her brother-in-law was appointed to the Board.

The Board construes the language of the exemption to apply only if the individual was regularly employed at the time the employee's relative became a member of the Board. Because Williams was not regularly employed by the Board in 1983 when her brother-in-law became a member of the Board, the Board argues that she does not qualify for the exception.

Williams bases her position on a series of opinions of Attorneys General interpreting the current section and its predecessors. While those opinions have persuasive value, they are not binding on this Court. *City of Virginia Beach v. Va. Restaurant Assoc.*, 231 Va. 130, 135, 341 S.E.2d 198, 201 (1986); *County Board v. Brown*, 229 Va. 341, 347, 329 S.E.2d 468, 472 (1985); *In Re: Dept. of Corrections*, 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981); *Albemarle County v. Marshall*, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975).

In 1940, the Attorney General considered Code § 660, a predecessor to Code § 2.1-639.16. At that time, the exemption provided that the employment prohibition did not apply "to any such relative employed by any school board at any time prior to the effective date of this act. . . ." Code § 660 (1936 & Supp. 1940). In construing the exemption, the Attorney General stated that the literal language of the text was "very broad" and that "[s]tatutes of this kind are to be strictly construed against rendering a person ineligible to employment." 1939-1940 Op. Va. Att'y Gen. 198. This policy focus has been relied on repeatedly in the opinions of Attorneys General on which Williams relies. *See* 1982-1983 Op. Va. Att'y Gen. 692-93; 1982-1983 Op. Va. Att'y Gen. 693-95; 1959-1960 Op. Va. Att'y Gen. 316-17; 1957-1958 Op. Va. Att'y Gen. 235.

In 1971, Code § 22-206, a predecessor to the section at issue, was moved from the Education Title, Title 22, and placed within the Virginia Conflict of Interests Act, Code §§ 2.1-347 through -358. In 1983, the section was recodified as Code § 2.1-615, within the Comprehensive Conflict of Interests Act. Code §§ 2.1-599 through -639 (the 1983 Act). Four years later, in 1987, the current section was enacted as part of the State and Local Government Conflict of Interests Act. Code § 2.1-639.1 of the current Act provides that the purpose of the Act is to assure citizens of this Commonwealth that "the judgment of public officers and employees will not be compromised or affected by inappropriate conflicts." To that end, the General Assembly directed that the Act was to be "liberally construed to accomplish its purpose." *Id.* We have applied this legislative directive since it was adopted in the 1983 Act, Code § 2.1-599. *See West v. Jones*, 228 Va. 409, 415-17, 323 S.E.2d 96, 100-01 (1984).

In contrast, none of the opinions of the Attorneys General relied on by Williams has focused upon whether the rationale

forming the basis for the 1940 opinion was supplanted by the principle of statutory construction imposed by the 1983 Act and carried forward in the present Act.[1] In the absence of analysis of this aspect of the legislative history, we do not consider these opinions of the Attorneys General persuasive and cannot rely on them to resolve the statutory construction issue presented here.

With this background, we begin with an examination of the language in the exemption. The exemption applies to one who "has been employed" prior to a relative becoming a member of the school board. The verb form used is the present perfect tense, which denotes an action beginning in the past and continuing to the present. Applying that principle of grammar, "has been employed" means that a person be employed by a school board both before and at the time the conflict arises. Williams's interpretation of the exemption, employment at any time before the conflict arose, would require use of a verb form in the past perfect tense—"had been employed," *i.e.*, an event beginning and ending in the past.

Furthermore, in contrast to the narrowed exemption which results from the use of the present perfect verb tense, Williams's interpretation results in a very broad construction of the exemption, covering all persons who were ever employed by any school board at any time prior to the inception of a conflict. Adoption of such a broad interpretation is inconsistent with the legislative directive that exemptions from the Act's provisions be narrowly construed.

The legislative intent of the Act is to engender confidence in public bodies and to eliminate situations in which preference or undue influence could come to bear in the operation of government. *Id.* at 415, 323 S.E.2d at 100. Construction of the exemption in a way that specifically allows situations in which preference or undue influence in hiring decisions based on a familial relationship could occur is directly contrary to the Act's goals. Accordingly, we hold that the exemption contained in Code § 2.1-639.16 is not applicable to Williams because she was not regularly employed by the Board at the time her brother-in-law was ap-

---

[1] While one opinion noted that the language of the exemption provision did not change when it was codified within the 1983 Act, that opinion did not discuss the legislative mandate for construction of that Act. *See* 1982-1983 Op. Va. Att'y Gen. 691-95.

pointed to the Board.[2] Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

---

[2] With this conclusion, we need not address Williams's second assignment of error regarding the appropriate standard of review to be applied by a trial court in reviewing decisions by school boards.